IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARL FREDERIC SEALEY | CRIMINAL ACTION<br>NO. 17-00347-1 |

**PAPPERT, J.**                                                                                          March 9, 2021

**<u>MEMORANDUM</u>**

Carl Frederic Sealey moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court denies the Motion because the 18 U.S.C. § 3553(a) factors counsel strongly against granting relief.

I

For years, Sealey tricked unwitting investors into giving him their hard-earned money. He gained their trust through deception, claiming he operated two multinational private equity firms with more than $15 billion in assets. He abused this trust by diverting approximately $1.4 million from 19 victims into his personal accounts and using the money to fund his lavish lifestyle. A grand jury indicted Sealey on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and thirteen counts of wire fraud and aiding and abetting in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, respectively. (ECF No. 1.) In 2018, he pled guilty to the conspiracy charge and one of the wire fraud and aiding and abetting counts. *See* (Guilty Plea Agreement ¶ 1, ECF 59).

Following his guilty plea, Sealey refused to cooperate with the Probation Office. Despite repeated requests, he failed to provide relevant financial statements and

disclosures, reporting only two bank accounts to the probation officer even though the FBI's investigation suggested he maintained four or five accounts. *See* (Sentencing Hr'g Tr. 31:19–25); (Presentence Investigation Report ¶¶ 22–23). This led the Government to suspect that he engaged in further fraudulent activity after pleading guilty. (PSR ¶ 22); (Gov't Sentencing Mem. 11, ECF 66.) Sealey also refused to accept responsibility for his offense, telling the Probation Office his only transgression was "doing things that weren't in the contracts." (PSR ¶ 21.) Taking all this into consideration, the Court accepted the Probation Office's recommendation to not reduce Sealey's offense level for acceptance of responsibility and sentenced him to 78 months' imprisonment and 3 years' supervised release. (Sent. Hr'g Tr. 26:22–27:5, 55:13–16.) It ordered him to pay a $200 special assessment and $1,508,325 in restitution.[1] (*Id.* at 55:15–16.) The Court immediately remanded Sealey into custody. He has served only 33 months of his 78-month sentence (counting credit for good time served) and paid $110 toward the special assessment.[2]

After sentencing, Sealey appealed and moved for bail, contending that one of his numerous attorneys, who he did not identify, misled him "as to the charges to which he was advised to plead guilty to" and that his plea was thus neither knowing nor voluntary. (ECF 91); (Mot. for Bail 2, ECF No. 92.) The Court denied the motion, finding that Sealey could not establish that he was not a flight risk or did not pose a danger to the safety of others or the community if released. (Mem. Denying Mot. for

---

[1] The Court amended this amount to $1,470,825 on October 5, 2018. (ECF No. 76.)

[2] Sealey reported having $92.35 in total assets to the Probation Office before sentencing. (PSR ¶ 79.) Besides paying only $110 toward his special assessment, he has paid nothing in restitution.

Bail 3, ECF 98.)  The Court explained:

> Based on the factual basis for his guilty plea, victim impact statements, the evidence presented at his sentencing hearing and the findings of fact in the Presentence Investigation Report, the Court concluded at sentencing that Sealey is "an incorrigible criminal, con man, grifter who will not hesitate to separate decent hardworking people from their money."

(*Id.*)  The Court also highlighted the frivolity of Sealey's appeal, noting he admitted all facts outlined by the Government at the change of plea hearing and acknowledged that he understood the maximum possible penalties he faced.  (*Id.* at 4–5.)

Now Sealey moves for compassionate release because he has several health problems, including Type II diabetes mellitus with diabetic neuropathy, hyperlipidemia, hypertension, obesity and blindness.[3]  (Mot. for Comp. Rel. 2–5, ECF 101-2.)  He also claims FCI Fort Dix has struggled to contain COVID-19 outbreaks, placing him at higher risk of infection.  (*Id.*)

## II

A district court may reduce an inmate's sentence as a form of compassionate release only if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction; and (3) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Relevant § 3553(a) factors include "the history and characteristics of the defendant," "the nature and circumstances of the offense," the "need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and the need to "protect the public from further crimes of

---

[3] Other than Type II diabetes, Sealey did not report any of these health concerns to the Probation Office before sentencing.  *See* (PSR ¶¶ 60–63).

the defendant." *Id.* § 3553(a)(1), (2)(A).  The applicable Sentencing Commission policy statement requires a court to determine a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" prior to release.  U.S.S.G. § 1B1.13.

### III

The Court need not decide whether Sealey's health concerns combined with the conditions at FCI Fort Dix present extraordinary and compelling reasons for release because the § 3553(a) factors do not warrant release.  *See United States v. Spivey*, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020); *see also United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release); *United States v. Lugo*, — F. App'x —, 2021 WL 81717, at *1 (3d Cir. Jan. 11, 2021) (per curiam) (same).

First, "the nature and circumstances of the offense and the history and characteristics of the defendant" weigh against release.  *See* 18 U.S.C. § 3553(a)(1).  Sealey earned his sentence by stealing more than $1.4 million from people whose trust he obtained through false pretenses then promptly abused.  His victims suffered financial ruin, mental anguish or, in at least one case, homelessness.  *See* (Sent. Hr'g Tr. 58:10–60:2).  This was not Sealey's first foray into fraud.  He has twice been convicted for passing bad checks—once in 1995 and again in 2009.  (*Id.* at 40:9–14.)

Second, the Court must consider the need for the imposed sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  *See* 18 U.S.C. § 3553(a)(2)(A).  The fraud in this case was extensive and caused significant harm.  Sealey's track record demonstrates a disregard

4

for the law and a proclivity for dishonesty and fraud.  Releasing Sealey now, after he served less than half of his sentence, would fail to promote respect for the law, provide just punishment for his actions or reflect the seriousness of his crimes.  *See* 18 U.S.C. § 3553(a)(2)(A), (C); *see also United States v. Daniels*, No. 15-127, 2020 WL 4674125, at *4 (E.D. Pa. Aug. 12, 2020) (Defendant "has not yet served even half of his 180-month sentence.  If the Court granted compassionate release at this stage, his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for his offense.").

      The final factors are the need for the imposed sentence to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(2)(B), (C).  Sealey's original sentence affords general and specific deterrence.  As a general deterrent, a lengthy sentence is necessary to place potential wrongdoers on notice that they will face significant penalties for similar conduct.  This is particularly important in cases involving white collar crimes.  *See United States v. Neff*, — F. Supp. 3d —, 2021 WL 816083, at *3 (E.D. Pa. 2021) ("[I]n cases involving white collar crimes, such as this one, a sophisticated individual's understanding of the likelihood of apprehension and length of punishment is an important component of a putative offender's calculus on whether to commit the crimes.").  Sealey's sentence is also designed to deter him from future crimes and to protect the public.  Although he has taken steps toward rehabilitation while in prison and claims to be remorseful for his crimes, the need to protect the public from his schemes remains high.  Prior to this request for release, Sealey had not accepted responsibility for his crimes or exhibited an understanding of the seriousness of the

5

harm he caused. Given the convenient timing of Sealey's contrition, the Court remains concerned about the threat he would pose to others if released. In this way, although his offense was non-violent, Sealey also remains a danger to the community. *See* 18 U.S.C. § 3142(g).

This decision is consistent with prior opinions in this District and the Third Circuit. *See Neff*, 2021 WL 816083, at *1, 3 (denying compassionate release for 72-year-old convicted of violating RICO, conspiracy to commit wire fraud and wire fraud who was suffering from atrial fibrillation, hypertension, atherosclerosis, cardiomyopathy, and being overweight) (citing *Pawlowski*, 967 F.3d 327 (although defendant had extraordinary and compelling reasons for a reduction, the district court did not abuse its discretion in denying release after defendant served only 19 months of a 180-month sentence for public corruption); *United States v. Shulick*, No. 16-cr-428, 2020 WL 3250584 (E.D. Pa. June 16, 2020) (despite defendant's asthma, release not warranted where defendant served only 19 months of a 60-month sentence for significant fraud); *United States v. Tartaglione*, No. 15-cr-491 2020 WL 3969778 (E.D. Pa. July 14, 2020) (release denied for defendant convicted of committing $2 million fraud who had served only two years of an 82-month sentence)).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
